UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 24-cr-222 (KMM/LIB) |
| Plaintiff, | |
| v. | ORDER ON GOVERNMENT MOTION IN LIMINE NOS. 1–6 AND DEFENSE MOTION IN LIMINE NOS. 1–6 |
| Matthew Thomas McGregor, | |
| Defendant. | |

The Court held a final pretrial conference in this matter on June 17, 2025. During the hearing, the Court issued bench rulings on the parties' motions in limine. This Order memorializes the Court's previously disclosed decisions and rules on one outstanding matter. The Court's reasoning is not restated in full here, but the parameters set for the admissibility or exclusion of evidence are memorialized for the convenience of the parties and the Court at trial.

The Court reminds the parties that rulings on motions in limine are subject to revision based on developments at trial. Any request to reconsider one of the Court's rulings on these matters must be made outside the presence of the jury.

**Defendant's Motion in Limine No. 1 and Government's Motion in Limine No. 2: Prior Bad Acts of Mr. McGregor [ECF Nos. 61, 68]**

Mr. McGregor's Motion in Limine No. 1 seeks an order preventing the government from introducing any evidence of "other bad acts" pursuant to FRE 404(b) and 413. In the government's Motion in Limine No. 2, the government seeks to admit evidence that

Mr. McGregor was violent toward Skye King in the past, arguing that such violence is relevant to motive, opportunity, and why Ms. King did not report the alleged assault to the police.[1]

The Court granted the government's motion in part and denied the defense's motion in part. Ms. King may testify about Mr. McGregor's alleged past violence toward her. This evidence is admissible to support the government's theory about why Ms. King did not report the alleged sexual abuse to the police, and did not report it to anyone more promptly. The evidence is also admissible to explain why Mr. McGregor thought that Ms. King would not report his conduct to the police if she caught him engaging in sexual conduct with Minor A in a common area of the home when other people were present. However, the evidence is not admissible to establish that Mr. McGregor kept the entire household under his control in some way so that he could engage in sexual conduct with Minor A, as the government suggested.

The Court finds that Ms. King's testimony on this point is relevant to important issues at trial, and its probative value is not substantially outweighed by the risk of prejudice, misleading the jury, or the other concerns protected against by FRE 403. But the Court will give a limiting instruction to the jury regarding the purposes for which the evidence can be considered.

---

[1] Mr. McGregor also challenged the admissibility of other alleged sexual acts between Mr. McGregor and Minor A, and between Mr. McGregor and Minor B. The government indicated that it does not seek to introduce such evidence at this time, so no ruling was issued on these matters.

The permissible evidence on these matters is limited to Ms. King's testimony, unless something at trial changes this calculus. At this time, the Court will not allow other witnesses to testify about having seen injuries on Ms. King, for example, because none of them have direct knowledge about the source of those injuries. Nor will the Court allow introduction of the Order for Protection Ms. King received against Mr. McGregor. The Court based its ruling limiting such extrinsic evidence on FRE 403, finding that it would unduly increase the prejudice to Mr. McGregor, create confusion of the important issues for trial, and waste substantial time on a collateral issue.

**Defendant's Motion in Limine No. 2: Government's Experts [ECF No. 61]**

In Motion in Limine No. 2, Mr. McGregor sought to exclude or limit testimony from two of the government's proffered experts. The Court denied the motion in large part but placed limitations on the anticipated testimony of one of the government's experts.

The Court will allow Nurse Smidt to testify about what a SANE examination is, how or why it is done and recommended, that consent is required for such an examination, and that there are limits to what can be learned from such an examination. Nurse Smidt is certainly qualified to offer expert testimony on these matters. The Court will also allow Ms. Smidt to testify that Minor A declined to participate in the SANE examination. But the Court will not allow a lengthy exploration of either the general value of a SANE examination or the limitations on its usefulness, because no SANE examination was done here. The government may introduce the information they feel is appropriate regarding Ms. Smidt's expert status, but they need not formally offer her—or any expert—as an expert witness.

The Court denied the motion to exclude the testimony of FBI forensic child interview specialist Michelle Thames.[2] As explained on the record, Ms. Thames' testimony is relevant to helping jurors understand the different ways children react to sexual abuse, and she can explain that victims sometimes falsely deny that abuse happened or recant prior allegations. The Eighth Circuit has often permitted such evidence in sexual abuse cases. Ms. Thames will not offer any case-specific testimony as she has not met Minor A, nor reviewed much information regarding this case.

**Defendant's Motion in Limine No. 3: Mr. McGregor's Statement [ECF No. 61]**

In Motion in Limine No. 3, Mr. McGregor sought an order precluding the government from playing only parts of Mr. McGregor's interrogation. The government decided that it will not seek to introduce any part of Mr. McGregor's interrogation during its case-in-chief. The Court, therefore, denied the motion as moot, subject to revisiting if Mr. McGregor testifies.

**Defendant's Motion in Limine No. 4: Use of Term "Victim" [ECF No. 61]**

In Motion in Limine No. 4, Mr. McGregor seeks to prohibit the government or its witnesses from referring to Minor A as a "victim" during trial, pursuant to FRE 402 and 403.

The Court granted in part and denied in part this motion. The Court orders the government to instruct its witnesses to refer to Minor A by her first name or as "Minor A" throughout the trial, and not to refer to her as "a victim," "the victim," or "Minor Victim

---

[2] Although the defense challenged the relevance and usefulness of Ms. Thames' testimony, no challenge was raised to her credentials.

A."[3] Counsel for the government must similarly refer to her in this matter throughout opening statements and witness examinations. The Court is prohibiting the government or witnesses from calling her a victim because the questions before the jury here are whether this sexual act occurred at all, and whether Minor A was in fact the victim of any crime.

However, the Court will allow the government to use the term victim during closing argument. And although the Court expects good-faith effort on the part of the government to avoid the moniker, an isolated accidental reference to Minor A as a victim will not require corrective action.

**Defendant's Motion in Limine No. 5: Hearsay[4] [ECF No. 61]**

In Motion in Limine No. 5, Mr. McGregor seeks to exclude hearsay statements from Ms. King to her grandmother and from the grandmother to others regarding Ms. King's claim that she witnessed Mr. McGregor having sex with Minor A. For ease of reference, the Court refers to this issue as the "phone tree": Ms. King reported the alleged sexual abuse to one person, who texted a second person, who showed the text to a third person, who called the police.

The Court will allow the phone-tree testimony. The evidence is not being admitted for the truth of the matter asserted (whether Ms. King in fact saw Mr. McGregor having sex with Minor A). Instead, it is relevant to establish what Ms. King did after witnessing the alleged offense, and whether that response was reasonable. The evidence also explains

---

[3] If witnesses or others accidentally use Minor A's last name, it will be stricken from the transcript. The Court will refer to her as Minor A in jury instructions.

[4] This topic was also addressed in the government's Motion in Limine No. 5.

5

the passage of time between the alleged offense and the law enforcement response the next day. And the Court notes that the one person with actual knowledge of what Ms. King saw and reported to the phone tree, Ms. King herself, will be present and subject to cross-examination.[5]

**Defendant's Motion in Limine No. 6: Sequestration [ECF No. 61]**

In Motion in Limine No. 6, Mr. McGregor moves the Court for an order excluding witnesses from the courtroom, prohibiting the disclosure of trial testimony to witnesses who are excluded from the courtroom, and prohibiting excluded witnesses from accessing trial testimony.

The Court granted the Motion and will exclude all potential witnesses with the exception of one case agent or investigator from each side. Sequestered witnesses may not be advised of the testimony that has been offered, nor may they review the transcripts, ahead of their own testimony.

**Government's Motion in Limine No. 1: "Self-Serving" Hearsay [ECF No. 68]**

In its Motion in Limine No. 1, the government requests an Order precluding Mr. McGregor from offering or referring to Mr. McGregor's "self-serving" hearsay statements. This is already prohibited by the Rules of Evidence, and the Court need not enter a separate order requiring compliance with the relevant rule, so the motion is denied.

---

[5] Although the Court forgot to explain it from the bench at the Pretrial Conference, the evidence of what Ms. King said to her grandmother—the first step in the phone tree—would also be admissible as a prior consistent statement pursuant to FRE 801(d)(1)(B)(ii), as the defense has left no doubt that it intends to attack Ms. King's credibility and argue that she never saw the alleged offense.

In addition, this issue was rendered moot by the government's decision not to offer any part of Mr. McGregor's statement, which might invite the defense to respond with other portions of the statement.

**Government's Motion in Limine No. 3: Character Evidence [ECF No. 68]**

In Motion in Limine No. 3, the government seeks to preclude Mr. McGregor from offering improper character evidence regarding any witness, and the parties discussed this at the hearing.[6] The Court granted this motion in part and denied it in part. Specifically, the Court will allow the exploration of certain evidence that could be described as character evidence related to Ms. King, as set forth below; other evidence may not be introduced.

The Court will allow the parties to explore prior domestic violence between Mr. McGregor and Ms. King, including allegations that Ms. King has been violent towards Mr. McGregor in the past. This evidence is relevant to test the credibility of Ms. King's claim that she did not report the alleged sexual abuse she witnessed because she was afraid of Mr. McGregor.

The Court will also allow Ms. King to be cross-examined about her prior offense of making a false police report. The false police report allegation goes to Ms. King's credibility and is admissible pursuant to FRE 609(a)(2).

---

[6] The defense stated that, other than the matters specifically discussed regarding Ms. King, it did not intend to offer character evidence regarding any government witnesses. However, it appears that certain records related to the criminal history of government witnesses had not yet been received by the defense. If the defense changes its assessment and seeks to offer character evidence about other witnesses, the Court will revisit the issue. However, the Court is not suggesting that either party must seek leave before generally impeaching any witness, as the Rules of Evidence do not require such a practice.

The Court took one aspect of this issue under advisement to enable review of the relevant records: whether evidence could be introduced of Ms. King's alleged violence toward other people and other misconduct. The Court has now reviewed the relevant records, all of which come from Red Lake. The Court grants the government's motion as to these records and rules that such evidence is not admissible.

The records provided by the parties suggest that Ms. King has pending assault charges related to allegedly "trying to run over" two young people on an ATV with her van while drunk ("the van incident"). She also has past charges and prior convictions related to disorderly conduct, public intoxication, driving while intoxicated, and permitting her children to be truant from school. The Court finds that the probative value of these incidents is outweighed by the considerations in FRE 403, including confusing the issues before the jury, creating undue prejudice, and wasting time. Most of Ms. King's previous record has no meaningful relevance to her testimony or her truthfulness and would only serve to improperly impugn her character.

The only offense involving victims other than Mr. McGregor that is even arguably relevant to the issues at trial is the still-pending complaint related to the van incident. Mr. McGregor argued that the matter is relevant to show that Ms. King is not the sort of person who would be too afraid of Mr. McGregor to contact the police when she saw the alleged sexual abuse in the present case. However, the record related to the van incident is actually far from clear. It appears that Ms. King was very intoxicated, that she might have been trying to harm herself, and that she was trying to get her keys and leave the scene before the alleged offense. Such facts do little to prove or disprove whether Ms. King's

reported fear of Mr. McGregor is genuine, nor whether she is the sort of person that would be easily scared. Moreover, there has been no conviction on that matter, no plea, no verdict. The mini trial that would be necessary in this federal case in order to explore what happened during the van incident would certainly be a waste of time and a significant distraction from the critical issue here: whether Mr. McGregor engaged in the charged offense of sexual abuse of Minor A. The evidence is excluded.

**Government's Motion in Limine No. 4: Statements [ECF No. 68]**

The government seeks to introduce two brief statements made by Minor A the day after the alleged sexual abuse, when the police came to the home and arrested Mr. McGregor. The defense objected on hearsay grounds. The Court admitted Minor A's statements as excited utterances pursuant to FRE 803(2). The precipitating event was the entry of many officers into the home to effectuate the arrest of Mr. McGregor, who was found hiding in the closet. Moreover, the statement was not testimonial, so it does not create Confrontation Clause issues. Finally, the Court noted that the statement could be interpreted in multiple ways, only one of which is actually incriminating of Mr. McGregor. Both sides are free to offer their own interpretations during closing arguments.[7]

---

[6] The parties are advised that neither one can elicit testimony about the meaning of the excited utterances, unless they seek leave to do so outside the presence of the jury and establish some foundation for such testimony. No witness should be asked to explain what they thought Minor A meant by the statements – that is a subject for closing argument and for the jury to decide.

**Government's Motion in Limine No. 6: Text Messages [ECF No. 68]**

In Motion in Limine No. 6, the government seeks to introduce text messages[8] between Minor A and Mr. McGregor. The defense opposed this motion on hearsay grounds and further argued that the evidence was unduly prejudicial. In addition, at the pretrial conference, the defense raised foundational challenges, suggesting that it cannot even be proven that Mr. McGregor sent the one text message attributed to him, nor that Minor A sent the message to which he was responding.

The Court will admit part of the text exchange and applied FRE 403 balancing to exclude some of the text exchange. First, Mr. McGregor's own DM is admissible as a statement of a party opponent. As to the foundation objection that Mr. McGregor raised, the Court reasoned that the standard for admissibility of evidence is not perfection. The government does not have to prove beyond a doubt or even to a very high degree of certainty that the evidence is what it purports to be. Instead, there must simply be evidence sufficient to support a finding that the item is what the proponent claims it is. Here, we have evidence that the message was sent from Mr. McGregor's Facebook account under his name. Moreover, other messages surrounding the ones at issue support the government's position that the account belongs to and is used by Mr. McGregor, as they are consistent with his communications with others. And Mr. McGregor has offered no evidence to suggest that the account is not his, or that other people used his account for

---

[7] The text messages were exchanged through the direct message ("DM") function of Facebook and were found on a phone seized from one of the minor children living in the home.

messaging. Although Mr. McGregor observed that phones were shared among people in the home, indicating that someone else could have sent the message, those arguments do not so undermine the evidence that supports that the text in question was sent by Mr. McGregor. These challenges are fair game on cross-examination, but unless new evidence is offered casting doubt on the provenance of the text exchange, these concerns do not preclude admissibility.

Second, the Court found that the part of the DM exchange purporting to come from Minor A to Mr. McGregor is admissible either as an adopted admission of Mr. McGregor or because it is relevant to show the effect on the listener, rather than for the truth of the matter.

However, the Court also found that many of Minor A's messages should be excluded for two reasons. First, as to the several messages that were more removed in time from Mr. McGregor's response, there is a much weaker inference that Mr. McGregor necessarily saw and was responding to those messages. On most cell phones, many of those messages would have been so far "up the screen" that if Mr. McGregor was not regularly checking his phone, he would have had to scroll upward to see them. Nothing in his response actually engages with any of the issues in the numerous earlier messages, and it is very possible that he never saw those. *See, e.g.*, *United States v. Williams*, 760 F. App'x 959, 963 (11th Cir. 2019) (noting that adoptive admissions require "sufficient foundational facts from which the jury could infer that the defendant heard, understood, and acquiesced in the statement" (quoting *United States v. Jenkins*, 779 F.2d 606, 612 (11th Cir. 1986)) (internal quotation marks omitted)). Additionally, several of the earlier messages suggested

11

that Mr. McGregor provided marijuana to Minor A, and that he treated her poorly and caused her to feel insecure. There is no relevance to such communications, and they are quite prejudicial.

The concern about whether Mr. McGregor saw the two messages much closer in time to his response is not present; in fact, the opposite is true. It is difficult to imagine his one text in any way but as a response to the messages that immediately precede it. The Court will permit the introduction of the final two texts from the messages account belonging to Minor A: "I'm sorry for killing your mood all the time you probably got upset when I got home LOL but I love just don't like when you mad at me," and "Love you." And Mr. McGregor's response: "Fuck yeah love u sexy."

**Supplemental Motions in Limine**

Finally, the government indicated its intention to file an additional motion in limine precluding the defense from arguing that the government is somehow responsible for not calling witnesses who were equally available to both sides. The Court gave leave for the government to file such a motion, and for the defense to respond.

**IT IS SO ORDERED**.

Date: June 26, 2025

                                                   *s/Katherine Menendez*
                                                   Katherine Menendez
                                                   United States District Judge